**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF SOUTH DAKOTA**

ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
**PIERRE, SOUTH DAKOTA  57501-2463**

**IRVIN N. HOYT**  TELEPHONE (605) 224-0560
BANKRUPTCY JUDGE  FAX (605) 224-9020

March 31, 2006

James E. Carlon, Esq.
Counsel for Plaintiffs-Debtors
Post Office Box 249
Pierre, South Dakota  57501

Brian L. Utzman, Esq.
Counsel for Defendant-Debtor
Post Office Box 899
Rapid City, South Dakota  57709-0899

Jon W. Dill, Esq.
Counsel for Defendant-Debtor
919 Main, Suite 102
Post Office Box 9490
Rapid City, South Dakota  57701

   Subject:  *James D. and Karmen L. Meyer v. Credit Collections Bureau (In re Meyer)*, Adversary No. 05-3007, Chapter 13, Bankr. No. 01-30117

Dear Counsel:

   The matter before the Court is Defendant Credit Collections Bureau's Motion for Summary Judgment regarding Plaintiffs-Debtors' Complaint to Enforce Automatic Stay and for Turnover of Property and Plaintiffs-Debtors' responses thereto.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As set forth below, Defendant's Motion for Summary Judgment will be granted in part and denied in part.

   *Summary*.  James D. and Karmen L. Meyer ("Debtors") filed a Chapter 13 petition on November 6, 2001.  A plan was confirmed May 16, 2002.  It provided "Debtors will pay 100% of duly-filed and allowed unsecured claim[s]."  The proof of claim filing deadline had passed earlier.

In re Meyer
March 31, 2006
Page 2


In November 2003, Debtors moved to modify their confirmed plan to address some defaults.  Unsecured creditors' claims were still to be paid in full.  In March 2005, Debtors again moved to modify their confirmed plan.  No changes were made to the treatment of unsecured claims.  The final plan payment under the twice-modified plan is now November 15, 2007.  The case remains open.

On September 8, 2005, Debtors commenced an adversary proceeding against Credit Collections Bureau ("CCB").  Debtors said after they filed bankruptcy they incurred debts to Jesse Olson, D.P.M., and J.D. Fogel, D.C.  Debtors further stated these debts were apparently assigned to CCB.  Debtors alleged CCB violated the automatic stay that was imposed when they filed bankruptcy by bringing small claims actions against Debtors and obtaining default judgments totaling $1,054.46.  Debtors also alleged CCB had garnished Debtors' wages.  They wanted those sums returned (the amount that was garnished was not stated).

Defendant CCB timely answered.  It said the automatic stay did not affect its collection actions because the subject debts were incurred post-petition, and CCB was not a scheduled creditor.  CCB further stated neither it nor its assignees ever received notice of Debtors' bankruptcy case during the state court debt collection and garnishment actions.

CCB moved for summary judgment on December 15, 2005.  It cited cases for its proposition that the automatic stay does not apply to collection activities regarding post-petition debts.

In their responsive brief,[1] Debtors submitted several authorities for their proposition that CCB's garnishment violated the automatic stay because the wages were property of the bankruptcy estate.  Debtor Karmen Meyer submitted an affidavit in which she said collection activities by CCB disrupted their ability to make plan payments.  She also affied they needed all their wages to meet living expenses and make the plan payments.

---

[1] As set forth in the Court's letter to counsel dated January 5, 2006, Debtors' cross-motion for summary judgment was treated as a response to CCB's motion for summary judgment.

In re Meyer
March 31, 2006
Page 3


CCB filed a reply brief.  Therein, it summarized the cases cited by Debtors and argued none were applicable except one, *In re Leavell*, 190 B.R. 536 (Bankr. E.D. Va. 1995), which CCB argued actually stood in favor of CCB's position.

*Discussion*.  <u>Summary judgment</u>.  Both parties agree that no material facts are in dispute and only questions of law are at issue.  Accordingly, summary judgment is appropriate.  Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c).  The record must be reviewed in a light most favorable to the non moving party. *Dowdle v. National Life Ins. Co.*, 407 F.3d 967, 970 (8th Cir. 2005).  However,

> [i]t is within the court's power to grant summary judgment *sua sponte* against the moving party, lacking a cross-motion, where the party against whom the judgment is entered has had a full and fair opportunity to contest that there are no genuine issues of material fact to be tried and the party granted judgment is entitled to it as a matter of law. *Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir.), *cert. denied*, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970); *Rowse v. Platte Valley Livestock*, 597 F.Supp. 1055, 1060 (D. Neb.1984); 6 MOORE'S FEDERAL PRACTICE ¶ 56.12 (2d ed. 1988); *see also* Fed.R.Civ.P. 54(c) (court may grant relief which has not been requested by a party).

*Burlington Northern Railroad. Co. v. Omaha Public Power Dist*., 888 F.2d 1228, 1231 n. 3 (8th Cir. 1989)(cited with approval in *Acton v. City of Columbia*, 436 F.3d 969, 975 n.5 (8th Cir. 2006)).

<u>Application of the automatic stay</u>.  Property of a Chapter 13 bankruptcy estate includes

> earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a)(2)(2004).  Further, "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain

In re Meyer
March 31, 2006
Page 4


in possession of all property of the estate." 11 U.S.C. § 1306(b)(2004).

When a bankruptcy petition is filed, an automatic stay arises such that a creditor may not obtain possession of property of the estate, 11 U.S.C. § 362(a)(3), or create, perfect, or enforce a lien against property of the estate. 11 U.S.C. § 362(a)(4). This stay protecting property of the estate remains in place until the property is no longer property of the estate, the case is closed or dismissed, or the debtor's discharge is granted or denied. 11 U.S.C. § 362(c).

Another Bankruptcy Code section is also applicable. Section 1327(b) provides that unless the confirmed plan or confirmation order provide otherwise, "the confirmation of a plan vests all of the property of the estate in the debtor." The Court of Appeals for this circuit addressed the interplay between § 1306(b) and § 1327(b) in *Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d. 687 (8th Cir. 1993), and found neither was a model of clarity. *Id*. at 689 (quoting *In re Clark*, 71 B.R. 747, 749 (Bankr. E.D. Pa. 1987)). Therein, the Court reviewed the different conclusions that have developed among the courts[2] and held

> We join the line of cases holding the estate continues to exist after confirmation of the Chapter 13 plan. Upon reviewing § 1327 regarding the effect of confirmation, even if property of the estate vests in the debtor at confirmation, that does not necessarily mean that the estate no longer exists. The estate can continue to exist as a legal entity after confirmation even if it holds no property. Several sections of the bankruptcy code support our view that the estate continues to exist after confirmation. Section 1322(a)(1) provides for "supervision and control" by the trustee over monies and property of the estate committed to the plan. In

---

[2] Another good review of the different conclusions courts have reached in reconciling § 1306 and § 1327(b) is set forth in *In re Holden*, 236 B.R. 156 (Bankr. D. Vt. 1999), *aff'd*, *U.S. v. Holden*, 258 B.R. 323 (D. Vt. 2000).

>      addition, the trustee is authorized to deposit or invest
>      money of the estate pursuant to 11 U.S.C. § 345, and
>      11 U.S.C. § 347(a) provides that the trustee shall stop
>      payment on any unpaid checks 90 days after the final
>      distribution and the remaining property of the estate is
>      to be paid into the court. Section 704(9), made
>      applicable to Chapter 13 by 11 U.S.C. § 1302(b)(1),
>      requires the trustee to make a final report and file a
>      final account of the "administration of the estate."
>      Finally, 11 U.S.C. § 349(b)(3) states that unless the
>      court orders otherwise, dismissal of a Chapter 13 case
>      "revests the property of the estate in the entity in
>      which such property was vested immediately before the
>      commencement of the case." These sections support the
>      position that the estate continues to exist after
>      confirmation of a Chapter 13 plan.
>                              ....
>      We think that the opposing line of cases is "premised
>      upon the mistaken belief that revesting under § 1327(b)
>      transforms property of the estate into property of the
>      debtor." *In re Aneiro*, 72 B.R. 424, 428-29 (Bankr. S.D.
>      Cal.1987). The *Aneiro* court further stated:
>
>           the clear language of § 1306 demonstrates that
>           confirmation of a Chapter 13 plan is not
>           relevant to determining whether property is or
>           is not property of the estate. The relevant
>           events in this determination are commencement
>           of the case and either dismissal, closing or
>           conversion of the case. If Congress had
>           intended for confirmation to so dramatically
>           affect the expansive definition of property of
>           the estate found in § 1306, it knew how to
>           draft such a provision.
>
>      *Id*. at 429. We agree.

*Nieman*, 1 F.3d at 690-91.  Accordingly, this Court must find
Debtors' post-petition wages were property of the Chapter 13 estate
and thus protected by the automatic stay.

In re Meyer
March 31, 2006
Page 6


The Court must also conclude CCB violated the automatic stay by taking possession of these wages through a garnishment. 11 U.S.C. § 362(a)(3). While the Court of Appeals for this Circuit has not directly ruled on this issue, the Bankruptcy Appellate Panel, following the majority, has concluded stay violations are void *ab initio*. *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 323-25 (B.A.P. 1999). While the Bankruptcy Appellate Panel's decision is not binding, this Court, too, joins the majority to conclude the garnishments[3] were void *ab initio*. *Id.* Thus, the wages must be returned to Debtors, and further garnishments must cease.[4]

Debtors are not entitled to any damages. Debtors failed to give CCB timely notice of their bankruptcy. CCB did not learn of the bankruptcy until well after Dr. Olson's garnishment had been completed and shortly after Dr. Fogel's garnishment had begun. Thus, the garnishments were not commenced by CCB with knowledge of the bankruptcy. *See Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989)(a wilful violation of the stay occurs when the creditor acts with knowledge of the automatic stay and its actions were intentional).[5]

---

[3] CCB did not violate the automatic stay in obtaining the default judgments against Debtors because the underlying debt was a post-petition debt. *See* 11 U.S.C. §§ 362(a)(1) and (2)(the stay as to debtors *in personam* applies only to enforcement of pre-petition claims).

[4] For cause, CBC may also seek a retroactive order modifying the stay. *See Bunch v. Hoffinger Industries, Inc. (In re Hoffinger Industries, Inc.)*, 329 F.3d 948, 951-954 (8th Cir. 2003).

[5] Even had CCB's violation been wilful, the present record does not readily support an award of damages above a return of the garnished funds. That Debtors had trouble making plan payments is obvious from a review of the case file, but Debtors did not identify any evidence they could present at trial to show the garnishments were a primary cause of their plan defaults, especially where health problems and temporary unemployment, as noted by Debtors, were also factors in their post-confirmation problems. Debtors also did not identify any evidence they could

In re Meyer
March 31, 2006
Page 7

The Court notes in closing that bringing this action may not have been Debtors' best remedy. Debtors may have only a Pyrrhic victory. CCB's claims will have to be paid, now or later. Seeking a declaration that CCB violated the stay is not going to alter that fact. Moreover, the claims were not large, especially in light of the legal fees each party has incurred in litigating this matter. Debtors' efforts may have been better directed in determining whether these medical service claims could have been brought within the plan as an administrative expense, *see e.g.,Williams v. IMC Mortgage Co. (In re Williams),* 246 B.R. 591, 593-94 (B.A.P. 8th Cir. 1999)(allowed Chapter 13 administrative expenses are those that tangibly benefit the estate), or a post-petition claim. 11 U.S.C. § 1305(a)(2). *In re Sims*, 288 B.R. 264, 266-269 (Bankr. M.D. Ala. 2003)(under certain circumstances, creditor holding claim for post-petition medical expenses rendered to a Chapter 13 debtor may, but is not required to, file a claim under § 1305(a)(2) and be paid under the confirmed plan); *see Chaney v. Grant (In re Chaney)*, 308 B.R. 588 (Bankr. N.D. Ga. 2004)(discussion of both administrative and allowable post-confirmation claims in a Chapter 13 case).

An appropriate order will be entered.

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

INH:sh

CC: case file (docket original; serve parties in interest)

---

present at trial to quantify the alleged damages arising from the garnishments.

**On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice.**

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Charles L. Nail, Jr.
Clerk, U.S. Bankruptcy Court
District of South Dakota